UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DIANA O'BRIEN,                          )
                                        )
              Plaintiff                 )
                                        )
        vs.                             )       CAUSE NO. 3:04-CV-791 RM
                                        )
DIVERSIFIED TRANSPORT, INC.,            )
                                        )
              Defendant                 )

OPINION AND ORDER

This cause is before the court on the motion of Diversified Transport, Inc. for summary judgment on Diana O'Brien's claims against the company. Ms. O'Brien claims she suffered sexual discrimination in violation of 42 U.S.C. § 2000(e) *et seq.* while employed by, and in connection with the termination of her employment at, Diversified. The parties also have filed motions to strike portions of the others' submissions. For the reasons that follow, the court grants Diversified's motion to strike, denies Ms. O'Brien's motions to strike, and grants Diversified's summary judgment motion.

MOTIONS TO STRIKE

Summary judgment rulings ordinarily begin with a recitation of the facts viewed most favorably to the non-moving party, but the parties' submissions in this case require the court to start by determining the content of the summary judgment record. The motions to strike will be addressed separately below.

*(a) Diversified's Motion to Strike*

Diversified moves to strike the affidavit of Mike Mock, submitted by Ms. O'Brien in support of her summary judgment response. According to Diversified, Mr. Mock's deposition testimony makes clear that his affidavit statements aren't based on personal knowledge. Ms. O'Brien disagrees and argues that personal knowledge and experience support Mr. Mock's affidavit statements, and she claims Diversified has mischaracterized Mr. Mock's testimony.

Rule 56(e) of the Federal Rules of Civil Procedure provides that affidavits "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A court may strike portions of affidavits – or affidavits in their entirety – that don't comply with Rule 56(e). An examination of Mr. Mock's affidavit statements and his deposition testimony shows that Mr. Mock's affidavit doesn't meet the requirements of Rule 56(e).

Diversified challenges Mr. Mock's statement in paragraph 3 of his affidavit that work was available for Ms. O'Brien following her disqualification by Bohren. Mr. Mock claims there were "at least" two trucks open, but his affidavit statements offer no specifics about how he knew the trucks were "open" or what work associated with those trucks or other trucks at Werner was "available." Mr. Mock admitted in his deposition he wasn't familiar with the terms of Diversified's contract with Werner and he hadn't talked to anyone at Werner about the possibility of Ms. O'Brien's employment there. Mr. Mock also confirmed in his

2

deposition that Diversified had no housekeeping, carpet cleaning, or parts delivery/pick up positions available and he didn't know if Ms. O'Brien had ever applied for any other position with Diversified. Mr. Mock has provided no basis for, or personal knowledge relating to, his statement that work was available for Ms. O'Brien after her disqualification by Bohren.

Diversified next challenges Mr. Mock's statement in paragraph 4 of his affidavit that Ms. O'Brien "could have driven for Werner." Mr. Mock further stated that

> Werner would have hired [Ms. O'Brien], as Werner is not very selective about its drivers. [Ms. O'Brien] would have had to have two or three major accidents in one year for Werner to refuse to employ [her]. It may have taken a little longer to get through the screening process, but it could have been done.

When Mr. Mock was questioned about this topic at his deposition, he said:

- he didn't know if Ms. O'Brien was qualified or could have qualified to drive for Werner;

- he had no personal knowledge about whether Werner would have hired her;

- he didn't know much about specifics of the Werner application, rules, or contract;

- he never talked to anyone from Werner about the possibility of Ms. O'Brien driving for Werner; and

- he didn't know if Ms. O'Brien had ever talked to anyone about driving for Werner.

Mr. Mock's deposition testimony demonstrates he had no firsthand knowledge to support his affidavit statement that Ms. O'Brien could have driven a truck for Werner.

Diversified further challenges Mr. Mock's opinions set forth in paragraphs 5 and 7-9 of his affidavit. In paragraph 5, Mr. Mock says he "had the feeling" that Dave Georgesen, Diversified's owner and the ultimate decision-maker with respect to Ms. O'Brien's employment with the company, "wanted to get rid of [Ms. O'Brien] and was looking for a reason to do so." Mr. Mock explained the basis for his opinion as follows: "I suggested [to Mr. Georgesen] that [Ms. O'Brien] be hired to run parts or sweep the floor. I do not recall exactly what [Mr. Georgesen] said, but it did not sit well with me." Mr. Mock went on to discuss his perceptions about Mr. Georgesen's "way of doing things" in paragraphs 7-9 of his affidavit by offering vague descriptions his own treatment by Mr. Georgesen (e.g., "for some reason, Dave determined that he did not want me working for him any more;" "Dave never said anything to me directly, but I heard through the grapevine . . .;" "Dave started treating me badly, ignoring me and such;" "I recognized Dave's treatment of me as similar to that of other employees."). Mr. Mock also testified at his deposition about his impression of Mr. Georgesen's actions relating to Ms. O'Brien:

> Q    Was it pretty clear to you after [Ms. O'Brien's] accident that [Mr. Georgesen] didn't want [Ms. O'Brien] working for him?
> A    Yes.
> Q    And what is that based on?
> A    Just the tone of voice, and the attitude of having brought anything up that had to do with [Ms.] O'Brien, was a no-no. It was just like now, if you mention my name over there, you get scolded.

4

Mock Dep., at 77.

Ms. O'Brien correctly says Mr. Mock may testify as to his opinions and impressions. The Federal Rules of Evidence allow a non-expert witness to testify about opinions or inferences that are "rationally based on the perception of the witness" and are "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." FED. R. EVID. 701. The question, then, is whether Mr. Mock's opinion "falls into the category of 'meaningless assertion' or whether that opinion actually will help the jury decide an issue in the case." Stagman v. Ryan, 176 F.3d 986, 996 (7th Cir. 1999) (quotation omitted).

Mr. Mock bases his opinion that Mr. Georgesen wanted to "get rid of" Ms. O'Brien – a fact in issue in this case – on a forgotten statement that "didn't sit well" with him, an unidentified speaker's "tone of voice," things he heard "through the grapevine," and an "attitude" Mr. Mock compares to the present-day attitude at Diversified. Mr. Mock, though, no longer works at Diversified and so can't have firsthand knowledge of the current "attitude" at Diversified to use as a basis for comparison. Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir. 1991) (even though personal knowledge includes inferences and opinions, "the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."). Mr. Mock's opinion statements about Mr. Georgesen's motivations relating to Ms. O'Brien's employment at Diversified contain no explanation for the basis of his knowledge

5

and can't qualify as being "rationally based on [his] perception" or "helpful to a clear understanding of [his] testimony or the determination of a fact in issue." *See also* FED. R. EVID. 701 advisory committee's notes ("If . . . attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule.").

"[C]onjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion." Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998); *see also* O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 986 (7th Cir. 2001) ("statements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to an inquiry of discrimination"); Jordan v. Summers, 205 F.3d 337, 343-344 (7th Cir. 2000) ("without supporting facts or explanatory details, this 'perception' is merely speculation regarding [the employer's] motives and cannot defeat summary judgment"). Statements, like those contained in Mr. Mock's affidavit, that are outside the affiant's personal knowledge, based on speculation or conjecture, or merely conclusory do not meet the requirements of Rule 56(e). Accordingly, Diversified's request that Mr. Mock's affidavit be stricken will be granted.

### (b) Ms. O'Brien's Motions to Strike

In her first motion to strike, Ms. O'Brien asks the court to strike Diversified's supplemental evidence submitted in support of its reply brief. Ms. O'Brien says that because the cited deposition testimony was available before

Diversified filed its summary judgment motion, the company should have presented the evidence in its original motion. She maintains Diversified's citing to supplemental evidence in its reply brief "is akin to trying to introduce evidence during a closing argument." The court can't agree.

The evidence submitted by Diversified in support of its reply consists of three pages of deposition testimony – pages 35 and 36 of Mr. Georgesen's deposition, where he discusses Diversified's advertising for additional drivers and offering of a position to Ms. O'Brien, and page 26 of Mr. Mock's deposition, where he discusses Ron Bennett's work at Diversified. While Ms. O'Brien claims those pages constitute "additional excerpts"of testimony to which she has no chance to respond, the summary judgment record shows that the topics addressed in the deposition excerpts at issue were raised and addressed by both sides in their summary judgment submissions. Too, Ms. O'Brien submitted and relied on those same deposition pages in support of her summary judgment response (pages 35 and 36 of Mr. Georgesen's deposition) and in opposition to Diversified's motion to strike Mr. Mock's affidavit (page 26 of Mr. Mock's deposition). She can't now complain she hasn't had a chance to respond to that evidence. Arguments that first appear in a reply brief are deemed waived, <u>Hart v. Transit Mgmt. of Racine, Inc.</u>, 426 F.3d 863, 867 (7th Cir. 2005), but Diversified's reply doesn't raise any new arguments and the three deposition pages can't be considered evidence to which Ms. O'Brien hasn't had a chance to respond. Her motion to strike will be denied.

Ms. O'Brien requests in her second motion to strike that a sentence be stricken from page 4 of Diversified's summary judgment memorandum. She contends the phrase, "[a]pproximately four to six weeks after Bohren disqualified him, Mr. Bennett contacted Diversified Transport about a job as a janitor, truck washer and all around mechanic's helper," is "scandalous" and should be stricken as not supported by the cited authority and directly contradicted by the sworn deposition testimony of Ron Bennett.

Federal Rule of Civil Procedure 12(f) allows a court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." The term "scandalous matter" is defined as a matter that is "grossly disgraceful (or defamatory) and irrelevant to the action or defense," BLACK'S LAW DICTIONARY 1345 (7th ed. 1999), or something that is "shocking or offensive; containing libelous or defamatory information." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1042 (1984). Allegations may be stricken as scandalous "if the matter bears no possible relation to the controversy," Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664 (7th Cir. 1992), or if the allegations "degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D. Colo. 1997).

The statement at issue – that "Mr. Bennett contacted Diversified about a job as a janitor, truck washer and all around mechanic's helper" – doesn't qualify as "scandalous." There is no allegation that the statement is defamatory or contains

8

libelous information; the statement isn't grossly disgraceful, shocking, or offensive; nor does the statement contain any repulsive language. Ms. O'Brien's disagreement with the statement doesn't warrant striking the statement from the record; the proper vehicle for raising her disagreement with Diversified's interpretation of Mr. Bennett's action in this regard is her summary judgment response. As was recently noted in <u>Custom Vehicles, Inc. v. Forest River, Inc.</u>, 464 F.3d 725, 727 (7th Cir. 2006), asking a court to engage in an editing exercise via a motion to strike a sentence from a brief "does nothing but squander time." Ms. O'Brien's motion will be denied.

FACTS

The following facts are taken from the summary judgment record and are viewed as favorably to Ms. O'Brien as is reasonable. Diversified Transport, Inc., owned and operated by David Georgesen, leases trucks and drivers to various trucking companies. In 2003, Diversified had contracts with two companies – Werner & Sons and Bohren Logistics. Under the terms of those contracts, drivers employed by Diversified would apply to drive for Werner and/or Bohren, and officials at Werner and/or Bohren would qualify or disqualify the drivers to drive for their companies. Additional terms of Diversified's contract with Bohren provided that drivers approved to drive for Bohren were required to abide by Bohren's rules and regulations and were subject to Bohren's policy that any driver

involved in an accident resulting in injury or cargo damage of more than $2,000.00 would be subject to termination.

In early 2003, Mr. Georgesen approached Diana O'Brien about working for Diversified. Ms. O'Brien applied and was hired in March 2003. Ms. O'Brien then applied to become a driver for Bohren. Her application was approved by Bohren, and she began driving trucks for that company. In July 2003, Ms. O'Brien was involved in an accident while driving a Diversified truck, pulling a Bohren trailer filled with Bohren cargo. Ms. O'Brien maintains the accident wasn't her fault; she says she swerved to miss an oncoming car and hit a guardrail. Damage to the trailer and cargo amounted to $3,586.39.

As a result of the accident, Bohren disqualified Ms. O'Brien as a driver on July 24, 2003 and notified Diversified of its decision. On July 25, Diversified sent Ms. O'Brien a separation notice and formally removed her from its payroll. Ms. O'Brien says that before her termination, she indicated to Mr. Georgesen that she wanted to continue to work for Diversified. She claims Mr. Georgesen told her no positions were available and further stated that she would never drive for him again.

Ms. O'Brien filed a charge of discrimination with the EEOC against Diversified and Bohren. She received her right to sue letter and filed suit in this court claiming she had suffered discrimination based on her gender and age. In December 2005, Ms. O'Brien dismissed her claims against Bohren, and in January 2006, she dismissed her age discrimination claim. Ms. O'Brien's

remaining claim is that while employed by Diversified she suffered discrimination and was wrongfully terminated based on her gender. She seeks compensatory and punitive damages, equitable relief, fees, and costs.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003); see also Crull v. Sunderman, 384 F.3d 453, 460 (7th Cir. 2004) ("Summary judgment should be granted when the facts, viewed in the light most favorable to the nonmoving party, fail to establish an essential element of the nonmoving party's claim on which she will bear the burden of proof at trial."). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).

11

The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. <u>Lawrence v. Kenosha County</u>, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* <u>Johnson v. Cambridge Indus., Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* <u>Schacht v. Wisconsin Dep't of Corr.</u>, 175 F.3d 497, 504 (7th Cir. 1999)).

Discussion

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination through direct evidence demonstrating discriminatory intent by the defendant or its agents or by offering indirect evidence of discrimination under the burden-shifting method set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>Phelan v. Cook County</u>, 463 F.3d 773, 779  (7th Cir. 2006).

Ms. O'Brien has chosen to proceed under the indirect method. To prevail, Ms. O'Brien must establish a prima facie case of gender discrimination by showing that (1) she belongs to a protected class, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer

12

treated similarly-situated employees outside her protected class more favorably. Farrell v. Butler Univ., 421 F.3d 609, 613 (7th Cir. 2005).

If Ms. O'Brien carries her burden of establishing those four elements, the burden shifts to Diversified to set forth a legitimate, non-discriminatory reason for the employment action, Moser v. Indiana Dep't of Correction, 406 F.3d 895, 900 (7th Cir. 2005), and "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000) (*quoting* Texas Dept. of Comm'y Affairs v. Burdine, 450 U.S. 248, 257 (1981)). The question of an employer's reasoning for an adverse employment action isn't addressed, though, "until there is a rebuttable presumption of discrimination, that is, after the employee establishes a prima face case of discrimination." Greer v. Board of Educ. of City of Chicago, 267 F.3d 723, 728 (7th Cir. 2001); *see also* Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 273 (7th Cir. 2004) ("The prima facie case is the condition precedent to the pretext analysis and should not be bypassed."). "While the *McDonnell Douglas* approach is often called a 'burden shifting' method of proof, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Stockett v. Muncie Transit, 221 F.3d at 1001; *see also* Moser v. Indiana Dep't of Correction, 405 F.3d at 901 ("The ultimate burden of persuasion remains at all times with the plaintiff.").

13

The parties agree Ms. O'Brien can meet her burden under the first and third prongs of the prima facie showing – she is a member of a protected class and she suffered an adverse employment action. Diversified says Ms. O'Brien can't establish a prima facie case of discrimination because she can't prevail on either the second or fourth elements – Diversified maintains Ms. O'Brien wasn't meeting the company's legitimate employment expectations and no male employee was treated more favorably.

Diversified says Ms. O'Brien wasn't meeting the company's legitimate expectations because she was disqualified from driving for Bohren and not qualified to drive for Werner. Ms. O'Brien argues in response that even though Bohren had disqualified her, Bohren's policy isn't at issue here. She claims her accident didn't automatically disqualify her from driving for Diversified, so while she may not have been meeting Bohren's expectations, there's no indication the same was true for Diversified. She claims the evidence establishes that she was meeting Diversified's legitimate expectations.

Ms. O'Brien says there were two driving jobs available with Werner when she was disqualified from Bohren, but she hasn't provided evidence sufficient to support that claim. Mr. Georgesen testified that at the time in question there were no Werner trucks open or available. Ms. O'Brien confirmed that Mr. Georgesen told her no positions were available. While Ms. O'Brien summarily concludes that she "would have qualified to drive for Werner," she hasn't alleged or argued that at the time in question she was qualified or had ever tried to qualify to drive for

14

Werner. She testified at her deposition that she never submitted an application to Werner. Ms. O'Brien's unsupported claim that Werner trucks were available or that she would have qualified to drive for Werner isn't evidence that she was meeting Diversified's legitimate expectations.

Ms. O'Brien next says Mr. Georgesen's offer to rehire her in July 2004 is evidence that she was meeting Diversified's legitimate expectations. She notes Mr. Georgesen's offer was extended to her over a year after she was discharged and at a time when her charge of discrimination was pending before the EEOC. She says it's "not logical" that she previously was unqualified to drive due to her accident, but then became qualified to drive almost a year later.

Mr. Georgesen was questioned about his offer to rehire Ms. O'Brien:

Q    Have you ever offered [Ms. O'Brien] a chance to return as a driver for Diversified?
A    Yes, I did.
Q    Can you tell me what prompted you to do that?
A    A dramatic – a need for drivers.
Q    What position did you offer her?
A    A job driving a Diversified tractor under my authority working the – the conditions would be roughly similar to what she had left. We no longer were engaged in working for Bohren or – or for Snyder . . . .

According to Diversified, when Mr. Georgesen sought to rehire Ms. O'Brien, conditions had changed – Diversified was hiring its own drivers under its own authority and jobs were available. Mr. Georgesen's offer to rehire Ms. O'Brien to drive a Diversified truck doesn't support a finding that at the time of her termination – when she wasn't qualified to drive for Bohren or Werner and

Diversified wasn't utilizing its own drivers – she was meeting Diversified's legitimate employment expectations.

Ms. O'Brien also points to Mr. Georgesen's deposition statement that he had been happy with her driving before her accident, but a determination of whether Ms. O'Brien was meeting Diversified's legitimate employment expectations doesn't involve an evaluation of her past performance, but rather an evaluation of "whether [she] was performing well at the time of [her] termination." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002); *see also* Grayson v. O'Neill, 308 F.3d 808, 818 (7th Cir. 2002) ("the issue is simply whether he was meeting the [employer's] expectations at the time of the discharge"). Ms. O'Brien hasn't come forward with evidence sufficient to establish that she was meeting Diversified's legitimate expectations at the time of her discharge.

Ms. O'Brien argues that even if she can't establish that she was meeting Diversified's legitimate expectations, she still may prevail if she can raise an inference that Diversified applied its legitimate expectations in a disparate manner. To satisfy this element (that is, the merger of the second and fourth prongs of McDonnell Douglas), Ms. O'Brien must show that a similarly-situated male employee at Diversified was treated more favorably. Grayson v. O'Neill, 308 F.3d 808, 818 (7th Cir. 2002). "To meet [her] burden of demonstrating that another employee is 'similarly situated,' [Ms. O'Brien] must demonstrate that there is someone who is directly comparable to [her] in all material respects." Grayson v. O'Neill, 308 F.3d at 819. That is, an employee who is substantially similar with

respect to their performance, qualifications, and conduct, <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617 (7th Cir. 2000), and who dealt with the same supervisor and was subject to the same standards. <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 680 (7th Cir. 2002).

Ms. O'Brien argues that she was treated less favorably than Ron Bennett. Ms. O'Brien says Mr. Bennett was similarly situated in that he was hired by Diversified and assigned to drive for Bohren, but Mr. Bennett was treated more favorably in two respects: first, Bohren didn't disqualify Mr. Bennett until after his third accident, and, second, Mr. Bennett wasn't immediately terminated by Diversified or informed that he could no longer work at Diversified following his disqualification by Bohren.

Ms. O'Brien claims Mr. Bennett was treated more favorably by Diversified because he wasn't disqualified until after his third accident, while she was disqualified after her first. Diversified insists Ron Bennett wasn't treated more favorably. According to Diversified, Mr. Bennett wasn't disqualified until his third accident because his first two accidents didn't involve losses to Bohren in excess of $2,000. According to Mr. Georgesen, Mr. Bennett's first accident resulted in damage to Bohren's trailer of approximately $2,500, but because the Diversified-Bohren contract required Diversified to pay the first $1,000 of damage to the trailer and $1,000 damage to the cargo resulting from accidents involving Diversified drivers, the loss to Bohren was less than $2,000. In Mr. Bennett's second accident, Diversified's tractor was damaged, but there was no damage to

17

Bohren's trailer or cargo. Mr. Bennett's third accident resulted in a total loss of the tractor, trailer, and cargo and serious injury to Mr. Bennett and, as a result, Mr. Bennett was disqualified by Bohren to drive for that company. Ms. O'Brien, like Mr. Bennett, was disqualified by Bohren based on an accident involving a loss to Bohren in excess of $2,000.[1]

Ms. O'Brien hasn't challenged Mr. Georgesen's statements relating to Mr. Bennett's accidents and his subsequent disqualification by Bohren, or alleged or argued that Diversified somehow influenced or dictated Bohren's disqualification decisions, or pointed to evidence sufficient to show that Diversified treated Mr. Bennett more favorably with respect to his disqualification by Bohren. That Bohren didn't disqualify Ron Bennett until after his third accident doesn't demonstrate or raise an inference that Diversified applied its legitimate employment expectations in a disparate manner.

Ms. O'Brien also says Diversified treated Mr. Bennett more favorably because following Mr. Bennett's disqualification by Bohren he wasn't immediately terminated or informed that he could no longer work at Diversified. Ms. O'Brien complains that Mr. Bennett "was allowed to hang around the garage and was eventually given a mechanic's assistant position at Diversified although [Mr.] Bennett never asked for either a driving or non-driving position. [Mr.] Bennett was

---

[1] Ms. O'Brien's July 15, 2003 accident resulted in the loss of Bohren cargo in the amount of $3,586.39. [Georgesen Dep., Exh. 1.]

even allowed to drive for parts even though his driving privileges were suspended at the time."

Diversified maintains Ms. O'Brien can't compare herself to Ron Bennett because they weren't similarly-situated in this regard. Diversified says Mr. Bennett was an employee "who was willing to do some other job for which an opening developed. There was no similar opening available for [Ms.] O'Brien, and in any event, Mr. Bennett did not return to being a truck driver." Diversified relies on Mr. Georgesen's deposition testimony relating to Mr. Bennett's status following his accident and disqualification by Bohren. Mr. Georgesen says Mr. Bennett "hung around the office and the shop on a daily basis on crutches while he was recuperating and getting his medical bills paid. . . . He was not working, but he was on the premises." Mr. Georgesen further explained that after Mr. Bennett's doctor released him to return to work, he continued to show up at the shop, "doing minor work for my mechanic, Mike Mock, helping him out, sweeping the floors, doing whatever. . . . And after several weeks of this, three or four weeks, I had a conversation with Mr. Mock about if [Mr. Bennett] is of value, did we want to put him to work doing that [and] we agreed that that was a good plan, that [Mr. Mock] could make use of [Mr. Bennett]. And we discussed a wage, and I approved that." Diversified concludes that even though Mr. Bennett was hired for a non-driving job, Diversified didn't have a job available for Ms. O'Brien and the company was under no obligation to create one.

To raise an inference that Diversified applied its legitimate employment expectations in a disparate manner, Ms. O'Brien must show that a similarly situated male employee was treated more favorably. Her burden is to demonstrate she was treated differently than another employee "who is prima facie identical in all relevant respects," Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002), including "their performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). Ms. O'Brien hasn't demonstrated that she and Mr Bennett had like qualifications or engaged in like conduct to establish they were similarly situated. Ms. O'Brien and Mr. Bennett each were disqualified by Bohren, but after Mr. Bennett's disqualification, he continued to show up at Diversified's premises and help out by doing odd jobs around the shop. Mr. Georgesen testified that even though Mr. Bennett wasn't working, he continued to show up at the shop and after a time demonstrated he could be of assistance to Mr. Mock. Mr. Bennett testified that after his disqualification from driving, he ended up being offered a job as a mechanic's assistant based on his ability to perform various functions in the shop. Ms. O'Brien hasn't alleged or argued that after her disqualification by Bohren, she continued to help out at Diversified even though she wasn't working there, nor has she alleged or argued that following her disqualification by Bohren there was a job available at Diversified for which she qualified. Ms. O'Brien hasn't established that she and Mr. Bennett "shared common features essential to a meaningful comparison." Radue v. Kimberly-Clark Corp., 219 F.3d at 619.

Viewing the record in the light most favorable to Ms. O'Brien, the court concludes she hasn't produced evidence sufficient to establish that she was meeting her employer's legitimate employment expectations, to raise an inference that Diversified applied its legitimate employment expectations in a disparate manner, or to demonstrate she was the victim of discrimination based on her gender in violation of 42 U.S.C. § 2000e-2. Because Ms. O'Brien hasn't carried her burden of establishing a prima facie case of gender discrimination, the court needn't address Diversified's claim that it had a legitimate, non-discriminatory reason for the termination of Ms. O'Brien's employment. Diversified is entitled to summary judgment on Ms. O'Brien's claims against the company in her amended complaint.

CONCLUSION

Based on the foregoing, the court

(1) GRANTS the motion of Diversified Transport, Inc. to strike the affidavit of Mike Mock [docket # 43];

(2) DENIES the motion of Diana O'Brien to strike Diversified's supplemental evidence [docket # 46];

(3) DENIES the motion of Diana O'Brien to strike a sentence from Diversified's summary judgment memorandum [docket # 48]; and

21

(4) GRANTS Diversified's motion for summary judgment [docket # 42].

SO ORDERED.

ENTERED:   __November 1, 2006__


   __/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court

22